IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CAROLYN KOWALSKI,<br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., AND AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, AND UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK,<br><br>Defendants | ) | CASE NO. ____________<br><br>JUDGE ______________<br><br>JURY DEMANDED |

**NOTICE OF REMOVAL**

TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, AT KNOXVILLE

Pursuant to 28 U.S.C. § 1441, *et. seq*., Defendant United States Life Insurance Company (hereinafter "U.S. Life"), by its undersigned counsel, respectfully submits this Notice of Removal of this action from state court to this Court, and states as follows:

1. On February 25, 2008, Plaintiff commenced a civil action in the Circuit Court for Jefferson County, Tennessee (the "State Court") under the style *Carolyn Kowalski v. American International Group, Inc., and American General Life and Accident Insurance Company, and United States Life Insurance Company in the City of New York,* Docket No. 21,661 I (the "Civil Action"). The Civil Action is still pending in State Court.

2. On March 13, 2008, Plaintiff filed a Notice of Voluntary Dismissal, voluntarily dismissing without prejudice Defendants American International Group, Inc. and American General Life and Accident Insurance Company. The Order dismissing Defendants American International Group, Inc. and American General Life and Accident Insurance Company was entered by the State Court on March 27, 2008.

3. U.S. Life, the only remaining defendant in the Civil Action, was served with the Summons and Complaint in the Civil Action on March 17, 2008. U.S. Life attaches hereto as **Exhibit A** the contents of the court file in the State Court in the Civil Action at the time of filing of this Notice of Removal.

4. To date, U.S. Life has not made any appearance in the Civil Action.

5. The Complaint asserts claims for breach of contract under Tennessee law, bad faith failure to pay claim under Tennessee law, violation of the Tennessee Consumer Protection Act, breach of contract under Florida law, and bad faith failure to pay claim under Florida law to recover past benefits under the terms of a long term disability plan.

6. The Civil Action is one over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332 in that:

(a) Plaintiff, both at the filing of this Civil Action and as of the date of filing of this Notice of Removal, was and is a citizen and resident of Tennessee;

(b) U.S. Life, both at the filing of this Civil Action and as of the date of filing of this Notice of Removal, was and is a corporation existing under the laws of the State of New York and having its principal place of business in the State of New York;

(c)     Plaintiff alleges that she became completely disabled on October 1, 2005;

(d)     Based upon the date of disability alleged by the Plaintiff and the nature of the benefits alleged to be owed pursuant to the terms of subject policy, Plaintiff's claim for benefits as of the time of filing of this Notice of Removal exceeds the jurisdictional amount of $75,000.00;

(e)     In addition, Plaintiff claims treble damages, a 25% bad faith penalty, and attorney's fees; and

(f)     For the foregoing reasons, the Civil Action is between citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.     By virtue of the provisions of 28 U.S.C. § 1441, this entire matter is one which may be removed to this Court.

8.     U.S. Life files this notice within thirty (30) days after first receiving a copy of the Complaint by service or otherwise.

9.     Plaintiff has stated that she will not contest removal of the Civil Action from the State Court to this Honorable Court.

10.    U.S. Life will give written notice of the filing of this notice to Plaintiff and will file a notice of the filing of this Notice of Removal with the Clerk of the Circuit Court for Jefferson County, Tennessee.  A copy of the Notice of Filing of Notice of Removal is attached as **Exhibit B**.

WHEREFORE, U.S. Life prays that the Civil Action now pending against it in the Circuit Court for Jefferson County, Tennessee, be removed therefrom to this Court.

Respectfully submitted,

HUSCH BLACKWELL SANDERS LLP

By: [signature]

Timothy L. Mickel, BPR No. 17486
Caroline B. Stefaniak, BPR No. 25710
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
(423) 266-5500

Attorneys for Defendant United States Life Insurance Company

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and exact copy of the foregoing Notice of Removal has been forwarded to Eric L. Buchanan, R. Scott Wilson, and D. Seth Holliday, attorneys for plaintiff, 414 McCallie Avenue, Chattanooga, Tennessee 37402 by regular U.S. mail, postage prepaid, this 27th day of March, 2008.

Caroline B. Stefaniak

IN THE CIRCUIT COURT OF
JEFFERSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| **CAROLYN KOWALSKI,** | ) | |
| **Plaintiff,** | ) | **JURY DEMAND** |
| **v.** | ) | **NO.:** 21,661 I |
| | ) | **DIVISION** |
| **AMERICAN INTERNATIONAL GROUP, INC., AND AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, AND UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK,** | ) | |
| **Defendants** | ) | |

**COMPLAINT**

**COMES** the Plaintiff, Carolyn Kowalski (hereinafter "Plaintiff"), by and through the undersigned counsel of record, and hereby brings the following Complaint against Defendants American International Group, Inc. (hereinafter "AIG"), American General Life and Accident Insurance Company (hereinafter "AGLA"), and United States Life Insurance Company in the City of New York (hereinafter "USLIC"), stating as follows:

EXHIBIT A

**PARTIES**

1. Plaintiff is an adult resident of Jefferson County, Tennessee.
2. Plaintiff alleges upon information and belief that Defendants AIG, AGLA and USLIC are insurance companies authorized to transact the business of insurance in this state.
3. Defendants AIG and/or AGLA and/or USLIC are the underwriters of and/or insurers of a disability insurance policy issued to Plaintiff, said policy having,

FILED 2-15 2008
AT 10:10 O'CLOCK A.M.
PENNY C. MURPHY, CLERK

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 6 of 60 PageID #: 6

inter alia, the following identifying characteristics: Policy No. G-164,156, Certificate Holder ID: 20091703-000, and Member ID: 00595726 (hereinafter "Policy").

4. Defendants AIG, AGLA and USLIC may be served with process by serving the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1131.

**JURISDICTION AND VENUE**

5. This is an action for damages for failure to pay benefits under an insurance policy and other related claims over which this court has jurisdiction.

6. Venue is proper in Jefferson County, Tennessee.

**FACTS**

7. Plaintiff purchased a Policy from Defendants AIG and/or AGLA and/or USLIC with effective dates listed as November 1, 1996, and subsequently October 1, 2000.

8. Plaintiff's employment at the time she purchased the Policy and at the time she became disabled was a trial attorney.

9. Plaintiff paid all premiums and has satisfied all the requirements for coverage under the above Policy, which is a contract for insurance.

10. Plaintiff, while covered under the Policy, suffered a bite from a spider on or about August 15, 2005, which initially caused, inter alia, anaphylactic and/or neurotoxic shock and subsequently caused, inter alia, episodic syncope, extreme and chronic fatigue, migraine headaches, severely painful joints, weakness affecting her neck, knees, shoulders, hips and ankles, daily nausea, regular lapses in concentration or

memory, and blurred vision, which interfered with her ability to work, and ultimately caused her to become disabled.

11. On October 1, 2005, Plaintiff's medical condition caused her to have a complete inability to perform the material duties of her regular job, at which time she suffered a significant loss of earnings.

12. Since October 1, 2005, Plaintiff has had a complete inability to perform the material duties of her regular job such that she has been unable to earn any income.

13. On or about January 6, 2006, Plaintiff applied for benefits under the Policy by submitting an insured's statement and work and education history form, and subsequently submitted, inter alia, attending physician statements from Dr. Erickson dated April 2, 2006 and May 28, 2006, a medical opinion form from Dr. Amato dated January 13, 2007, and a letter from Dr. Rich dated January 23, 2007.

14. On February 25, 2007, Defendants AIG and/or AGLA and/or USLIC sent Plaintiff a letter explaining that it had denied coverage on her claim.

15. On May 1, 2007, Plaintiff, through counsel, appealed the denial of her claim and submitted additional information in support of her claim.

16. On September 21, 2007, Defendants AIG and/or AGLA and/or USLIC sent Plaintiff a letter explaining that it had upheld its original denial of coverage on her claim.

17. Plaintiff has not received benefits under the Policy.

**COUNT ONE**

**TENNESSEE BREACH OF CONTRACT**

Plaintiff incorporates the allegations contained in paragraphs 1 through 17 as if fully stated herein and further states that:

18. Under the laws of the State of Tennessee, Plaintiff was covered under the Policy and said Policy constitutes a contract for insurance coverage.

19. Under the laws of the State of Tennessee, Plaintiff made a valid and timely claim for benefits under the terms of the Policy and Defendants have refused to pay.

20. Under the laws of the State of Tennessee, Plaintiff has paid all premiums and has met all other conditions precedent to have a valid contract for insurance coverage and has satisfied the terms of the contract entitling her to benefits under the contract.

21. Under the laws of the State of Tennessee, Defendants have breached, and continue to breach, their contractual duties under the insurance Policy by failing and refusing to pay benefits owed the Plaintiff and by failing to perform their duties as set out in the contract.

22. Under the laws of the State of Tennessee, as a direct and proximate result of Defendants' breach, Plaintiff has suffered, and continues to suffer, substantial damages as previously set forth above.

**COUNT TWO**

**TENNESSEE BAD FAITH FAILURE TO PAY CLAIM**

Plaintiff incorporates the allegations contained in paragraphs 1 through 22 as if fully stated herein and further states that:

23. At all times relevant to the matters alleged herein, Defendants were under a duty to use good faith in the handling of Plaintiff's claim.

24. Plaintiff's claim for benefits is due and payable and Plaintiff's application was filed on or about January 6, 2006, which constitutes a formal demand for payment, and Defendants have either failed or refused to pay further benefits.

25. Defendants impeded a legitimate and well-supported claim for benefits, which clearly shows intent not to honor the terms of the Policy.

26. Defendants acted in bad faith in denying benefits to Plaintiff or in failing to timely make a decision on Plaintiff's claim.

27. As a direct and proximate result of Defendants' actions in handling this claim, either jointly or separately, Plaintiff has suffered, and continues to suffer, monetary loss and damages, including the need to hire an attorney to enforce the terms of a contract for insurance.

28. Because Defendants did not act in good faith in denying Plaintiff's claim for benefits, Defendants are liable under Tennessee Code Annotated § 56-7-105(a) for additional damages in an amount up to 25% of liability.

**COUNT THREE**

**VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT**

**TENNESSEE CODE ANNOTATED § 47-18-101 AND § 47-18-109.**

Plaintiff incorporates the allegations contained in paragraphs 1 through 28 as if fully stated herein and says further that:

29. Tennessee Code Annotated § 47-18-109 provides a private right of action to any person who suffers an ascertainable loss of money or property as a result of the

use or employment by another person of an unfair or deceptive act or practice declared unlawful by the Consumer Protection Act.

30. The acts which are prohibited under the Consumer Protection Act are listed in Tennessee Code Annotated § 47-18-104. In addition to specifically prohibited acts, Tennessee Code Annotated § 47-18-104(b)(27) is a catch-all provision prohibiting all practices which are deceptive or unfair to customers.

31. By ignoring the terms of the disability insurance contract, by failing to adequately communicate with the Plaintiff, and by giving the Plaintiff inadequate or misleading information about her claim, the Defendants have acted unfairly and deceptively.

32. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer monetary loss and damages.

33. Through its handling of Plaintiff's claim, the Defendants have willfully and knowingly violated the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-101 et. seq., entitling Plaintiff to treble damages.

**COUNT FOUR**

**FLORIDA BREACH OF CONTRACT**

Plaintiff incorporates the allegations contained in paragraphs 1 through 17 as if fully stated herein and further states that:

34. Under the laws of the State of Florida, Plaintiff was covered under the Policy and said Policy constitutes a contract for insurance coverage.

35. Under the laws of the State of Florida, Plaintiff made a valid and timely claim for benefits under the terms of the Policy and Defendants have refused to pay.

36. Under the laws of the State of Florida, Plaintiff has paid all premiums and has met all other conditions precedent to have a valid contract for insurance coverage and has satisfied the terms of the contract entitling her to benefits under the contract.

37. Under the laws of the State of Florida, Defendants have breached, and continue to breach, their contractual duties under the insurance Policy by failing and refusing to pay benefits owed the Plaintiff and by failing to perform their duties as set out in the contract.

38. Under the laws of the State of Florida, as a direct and proximate result of Defendants' breach, Plaintiff has suffered, and continues to suffer, substantial damages as previously set forth above.

**COUNT FIVE**

**FLORIDA BAD FAITH FAILURE TO PAY CLAIM**

Plaintiff incorporates the allegations contained in paragraphs 1 through 17 and paragraphs 34 through 38 as if fully stated herein and further states that:

39. At all times relevant to the matters alleged herein, Defendants were under a duty to use good faith in the handling of Plaintiff's claim.

40. Plaintiff's claim for benefits is due and payable and Plaintiff's application was filed on or about January 6, 2006, which constitutes a formal demand for payment, and Defendants have either failed or refused to pay further benefits.

41. Defendants impeded a legitimate and well-supported claim for benefits, which clearly shows intent not to honor the terms of the Policy.

42. Defendants acted in bad faith in denying benefits to Plaintiff or in failing to timely make a decision on Plaintiff's claim.

43. As a direct and proximate result of Defendants' actions in handling this claim, either jointly or separately, Plaintiff has suffered, and continues to suffer, monetary loss and damages, including the need to hire an attorney to enforce the terms of a contract for insurance.

44. Because Defendants did not act in good faith in denying Plaintiff's claim for benefits, Defendants are liable under Florida Statutes Annotated § 624.155 et seq. for additional damages, including attorneys fees under Florida Statutes Annotated § 627.428, in the maximum amount allowable under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court grant her the following relief in this case:

That the Court enter judgment in favor of Plaintiff and against Defendants and that the Court order Defendants to perform their obligations under the contract for insurance and to pay past due benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

That the Court order Defendants to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

That the Court order Defendants to continue paying benefits to Plaintiff until such time as she no longer qualifies for continuation of benefits;

That the Court order Defendants to pay an additional 25% of the contractual liability for bad faith handling of the claim, pursuant to Tennessee Code Annotated § 56-7-105(a);

That the Court order Defendants to pay additional damages up to the maximum

extent allowable under the law for bad faith handling of the claim, pursuant to Florida Statutes Annotated § 624.155 et seq.;

That the Court order Defendants to pay treble damages pursuant to Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-101 et. seq.;

That the Court order Defendants to pay Plaintiff's attorneys fees and costs under applicable Tennessee and Florida State Law, including Florida Statutes Annotated § 627.428; and,

That Plaintiff recover any and all other relief to which she may be entitled.

Plaintiff further demands a jury to hear her case.

Dated this 22nd day of February 2008.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF

BY: ____________________
Eric L. Buchanan (#018568)
R. Scott Wilson (#019661)
D. Seth Holliday (#023136)
414 McCallie Avenue
Chattanooga, Tennessee 37402
(423) 634-2506
(423) 634-2505 (fax)

THE UNITED STATES LIFE Insurance Company In the City of New York
(Called United States Life)

United States Life will pay the benefits of this policy subject to its provisions. This page and the pages that follow are part of this policy.

**Group policy no.:** G-164,156

**Policyholder:** AMERICAN BAR ENDOWMENT

**PREMIUM PAYMENTS**

This policy is issued in return for the payment by the Policyholder of required premiums. Premiums are payable at the home office of United States Life or to its authorized agent. The first premium is due on the effective date of this policy. Later premiums are due in advance on the first day of:

- Annually, each November;
- Semi-annually, each November and May:
- Quarterly, each November, February, May, August;
- Monthly, each month.

These dates are the premium due dates.

**EFFECTIVE DATE**

This policy will take effect on May 1, 1998. This policy replaces Group Policy No. G-164,156, which was issued by United States Life and took effect as of November 1, 1994.

**POLICY ANNIVERSARIES**

Policy anniversaries will be November 1, 1998 and each subsequent November 1

**APPLICABLE LAW**

This policy is issued in and governed by the laws of Illinois.

Signed on the effective date, at United States Life's home office at 125 Maiden Lane, New York, New York 10038.

Marie Arligone
Registrar

Chairman of the Board

Signed by: ____________________
(A licensed resident agent where required by law)

GROUP ACCIDENT AND HEALTH INSURANCE POLICY

G-19000
FP

## POLICY INDEX

Each page in this policy has a 2 line code at the bottom left of the page. The code "G-19000" means that the page belongs to the policy series. The letter or letters below the policy code represents a phonetic description of the particular section (FP = Face page; E = Eligibility). If a section requires more than one page, the descriptive letter is followed by a number indicating its order in the section (SCH-2 is the second page in the Schedule of Benefits section).

This index refers you to the phonetic codes.

| SECTION | PAGE(S) |
|---|---|
| Face Page | FP |
| Schedule of Benefits | SCH |
| Definitions | DEF |
| Eligibility | |
| Eligible Classes | E-1 |
| Date Persons Are Eligible For Insurance | E-1 |
| Date Insurance Takes Effect | E-1 |
| Actively At Work Requirement | E-1 |
| Date Insurance Ends | E-2 |
| Long Term Disability Benefits | LTD |
| Pregnancy Benefits | P |
| Special Provisions For Groups Taken Over From a Prior Plan | TOG |
| Premiums | PLAH |
| End Of Insurance Provided By This Policy | END |
| General Provisions | |
| The Contract | GP-1 |
| Limit On Agent's Authority | GP-1 |
| Incontestability | GP-1 |
| Certificates | GP-1 |
| Misstatements | GP-1 |
| Data Needed | GP-1 |
| Payment To A Minor Or Incompetent | GP-1 |
| Assignment | GP-1 |
| Policy Non-Participating | GP-2 |
| Agency | GP-2 |
| New Entrants | GP-2 |
| Compliance With Law | GP-2 |
| Gender | GP-2 |
| General Provisions For Accident And Health Insurance | |
| Filing A Claim | GPAH |
| Payment of Claims | GPAH |
| Physical Exams | GPAH |
| Time Limit On Legal Actions | GPAH |

## SCHEDULE OF BENEFITS

### LONG TERM DISABILITY BENEFITS

| Waiting period during disability | Plan I | Plan II | Plan III | Plan IV | Plan V |
|---|---|---|---|---|---|
| | 30 days | 60 days | 90 days | 180 days | 365 days |

**Note:** the 30 day and 60 day waiting periods are not available for a spouse.

Benefit per month of disability:

• maximum for total disability: *

- for members

$100 to $9,500, in $100 increments, OR the amount in effect on April 30, 1998, but not to exceed:

• for benefit amounts between $100 through $7,500, 66 2/3% of the member's basic monthly pay

• for benefit amounts greater than $7,500, 60% of the member's basic monthly pay.

- for spouses

$100 to $5,000, in $100 increments, but not to exceed:

• 66 2/3% of the spouse's basic monthly pay; and
• 9 times the member's monthly benefit in effect under this policy

• maximum for partial disability

A percentage of the monthly benefit paid to the member during total disability as follows:

• if Partial Disability Earnings are between 1% and 10% of Pre-Disability earnings, 100%.

• if Partial Disability Earnings are between 11% and 50% of Pre-Disability earnings, 50%.

• if Partial Disability Earnings are between 51% and 70% of Pre-Disability earnings, 25%.

Note Amounts which do not fall within the percentages stated above for pre-disability earnings will be rounded to the nearest percentage.

• increased benefit during hospital confinement

the benefit amount otherwise payable, increased by 50%

Maximum benefit period for each injury or sickness.

• for total disability:

- if total disability begins prior to age 63

to age 65, **except** as stated below

**Exception:** for total disability due to mental, nervous or emotional disorders

see page LTD-2

- if total disability begins on or after age 63

24 months

• for partial disability

until the earliest of:

• the end of the maximum benefit period described above for total disability, or

• the end of a period of 2 years

• for increased benefits during hospital confinement

3 months

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 17 of 60 PageID #: 17

**SCHEDULE OF BENEFITS (continued)**

* a.) The elected amount, when adding the monthly benefit being applied for with the monthly benefit of all other disability income insurance, whether issued for or applied for, may not exceed:

- for benefit amounts between $100 through $7,500, 66 2/3% of the member's basic monthly pay

- for benefit amounts between $100 through $5,000, 66 2/3% of the spouse's basic monthly pay, not to exceed 9 times the member's monthly benefit amount in effect under this policy

- for benefit amounts greater than $7,500, 60% of the member's basic monthly pay.

b.) A member may apply for a benefit under more than one Plan, not to exceed a combined total of two** Plans available under group policy no.s G-164,155 and G-164,156. A spouse cannot apply for a benefit under more than one plan. (** a person who was insured under 3 or 4 plans under this policy on April 30, 1998 will remain insured under all such plans.)

c.) The combined total limit of coverage for each insured member under group policy nos. G-164,155 and G-164,156 is $9,500.

d.) The total limit of coverage for each insured spouse is $5,000.

**Change In Amount Of A Person's Insurance**

**For a decrease**

If insurance is to decrease, such change will take effect on the first day of the month coinciding with or next following the date of request for a decrease.

**For an increase**

An increase in an insured person's amount of insurance will take effect on the first day of the month coinciding with or next following the date United States Life approves the request.

The monthly benefit, when adding the increased amount being applied for with the monthly benefit of all other disability income insurance whether issued for or applied for, may not exceed:

- for benefit amounts between $100 through $7,500, 66 2/3% of the member's basic monthly pay

- for benefit amounts between $100 through $5,000, 66 2/3% of the spouse's basic monthly pay, not to exceed 9 times the member's benefit amount under this policy, or $5,000

- for benefit amounts greater than $7,500, 60% of the member's basic monthly pay

A person must be actively at work on the date an increase in his insurance is to take effect. If he is not, such increase will take effect on the first day of the month coinciding with or next following the date he resumes such work.

The date the increase is to take effect might not be a scheduled workday. If so, the person will be considered actively at work on such date if he was actively at work on his last scheduled workday.

A person must be able to perform the normal activities of a person of like age and sex, with like occupation or personal status on the date an increase in his insurance is to take effect. If he is not, such increase will take effect on the first day of the month coinciding with or next following the day the person resumes such activities.

A person might be hospitalized on the date an increase in his insurance is to take effect. If so, the increase will take effect on the first day of the month coinciding with or next following the day after he is discharged.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means that a person performs each duty of his job for full pay. This must be done at the person's or his employer's place of business or any place to which such business requires the person to travel.

FULL-TIME means:

• for a member, active work on a regular work schedule required of the member's job or occupation. This is to include his specialty in the practice of law

• for a spouse, active work on the spouse's employer's regular work schedule. The work schedule must be at least 30 hours a week.

PHYSICIAN means:

• a medical practitioner licensed to provide medical services and perform general surgery,
• an authorized Christian Science practitioner as recognized by the Mother Church, the First Church of Christ, Scientist, in Boston, MA, or
• any other practitioner whose services, by law of the state where such services are performed, must be covered by this policy.

Each such person must be licensed in the state where he performs the service and must act within the scope of that license. He must also be certified and/or registered if required by such state. These requirements will not apply to an authorized Christian Science practitioner.

"Physician" will not include an insured person or an insured person's spouse or his or his spouse's father, mother, son, daughter, brother or sister.

HOSPITAL means a licensed institution which is approved by the Joint Commission on Accreditation of Hospitals. "Hospital" does not mean a place, or part of one, which is used mainly for:

• the aged
• the chronically ill
• convalescents
• drug addicts
• alcoholics
• a rest home
• a nursing home
• custodial, educational or rehabilitory care.

"Hospital" will be deemed to include approved Christian Science Sanitariums of this church.

INSURED PERSON means an insured member or an insured spouse of a member.

WAITING PERIOD means a period of consecutive days of total disability for which no benefit is payable. The duration of the waiting period is shown in the Schedule of Benefits. The waiting period begins on the first day of total disability occurring after the effective date of the insured person's insurance.

BASIC MONTHLY PAY means the insured person's monthly rate of earned income from salaries, fees and other amounts received for personal services rendered or work performed. If the insured person owns any portion of a business or profession Basic Monthly Pay would include the insured person's share of income earned by that business or profession to include the insured person's personal activities minus the insured person's share of the business expenses which are deductible for Federal Income Tax purposes. Such rate will be determined by the average of the 12 months' income after business expenses which immediately precedes the insured person's application. Basic Monthly Pay does not include dividends, rents, royalties, annuities or other forms of unearned income.

PARTIAL DISABILITY EARNINGS means the insured person's rate of earned income from salaries, fees and other amounts received for personal services rendered or work performed during partial disability. If the insured person owns any portion of a business or profession, Partial Disability Earnings would include the insured person's share of income earned by that business or profession to include the insured person's personal activities minus the insured person's share of the business expenses which are deductible for Federal Income Tax purposes. Such rate will be determined by the monthly income after business expenses for each monthly period for which partial disability benefits are claimed. Partial Disability Earnings does not include dividends, rents, royalties, annuities or other forms of unearned income.

PRE-DISABILITY EARNINGS means the insured person's monthly rate of earned income from salaries, fees and other amounts received for personal services rendered or work performed. If the insured person owns any portion of a business or profession, Pre-disability Earnings would include the insured person's share of income earned by that business or profession to include the insured person's personal activities minus the insured person's share of the business expenses which are deductible for Federal Income Tax purposes. Such rate will be determined by the average of the 12 months income after business expenses which immediately precedes the date total disability commences. Pre-disability Earnings does not include dividends, rents, royalties, annuities or other forms of unearned income.

MENTAL ILLNESS means any condition or disease, regardless of its cause, listed in the most recent edition of the International Classification of Diseases as a Mental Disorder except for conditions or diseases specifically excluded from coverage.

MEMBER means a fully privileged voting member of the American Bar Endowment.

SPOUSE means the lawful married spouse of a member.

## ELIGIBILITY

### ELIGIBLE CLASSES

1. All members who were insured under this policy on April 30, 1998 and who are Actively At Work on a Full-Time basis.

2. For Plans II, III, IV and V only, all persons who submit evidence of their insurability satisfactory to United States Life and who·

- are under age 65;
- are actively at work on a full-time basis;
- are members in good standing with the AMERICAN BAR ENDOWMENT; and
- become insured under this policy on or after May 1, 1998.

3. For Plans III, IV and V only, all persons who submit evidence of their insurability satisfactory to United States Life and who are:

- the lawful spouse of a member described in items 1. or 2. above who is insured under this policy;
- actively at work on a full-time basis; and
- under age 65.

A person may be insured as a member or a spouse, but not both.

### DATE PERSONS ARE ELIGIBLE FOR INSURANCE

Each person in an eligible class on May 1, 1998 will be eligible for insurance on that date.

Each person who enters an eligible class after May 1, 1998 will be eligible for insurance on the date he enters such class.

### DATE INSURANCE TAKES EFFECT

**For members who were insured under this policy on April 30, 1998**

A member's insurance will continue in effect subject to the provisions of this policy.

**For persons who become insured under this policy on or after May 1, 1998**

A member must request insurance for himself and his spouse in writing. Each person must give evidence of his insurability satisfactory to United States Life. If approved, a person will be insured on the first day of the month coinciding with or next following the date United States Life approves the request, provided the required premium is paid.

**Note:** The insurance of an insured person may be subject to exclusions for certain conditions consistent with United States Life's underwriting practice. Such conditions, if applicable, are described in the certificate rider, form no ASG 29423, which is made a part of the certificate. By paying the required premium, an insured person accepts the insurance provided by this policy, subject to the exclusions for the conditions described in such rider.

### ACTIVELY AT WORK REQUIREMENT

A person must be actively at work and in an eligible class on the date his insurance is to take effect. If he is not, such insurance will take effect on the first day of the month coinciding with or next following the day he resumes such work.

The date insurance is to take effect might not be a scheduled workday. If so, the person will be considered actively at work on such date if he was actively at work on his last scheduled workday.

### ABILITY REQUIREMENT

A person must be able to perform the normal activities of a person of like age and sex, with like occupation or personal status on the date his insurance is to take effect. If he is not, such insurance will take effect on the first day of the month coinciding with or next following the day the person resumes such activities.

### OUT OF HOSPITAL REQUIREMENT

A person might be hospitalized on the date his insurance is to take effect. If so, insurance will take effect on the first day of the month coinciding with or next following the day after he is discharged.

**ELIGIBILITY (Continued)**

**DATE INSURANCE ENDS**

An insured person's insurance will end at the earliest of:

1. the date this policy ends;

2. the end of the period for which the last premium has been paid for such insured person;

3. the date the insured person retires;

4. the November 1 coinciding with or next following the date the member ceases to be a member in good standing with the AMERICAN BAR ENDOWMENT;

5. the November 1 coinciding with or next following the date the insured person ceases full-time work for reasons other than disability; or

6. the November 1 coinciding with or next following the date the insured person attains age 70;

In addition to items 1 through 3 and 5 and 6 above, insurance will also end for a spouse at the earliest of:

7. the date their marriage ends by divorce or annulment; or

8. the date the member's insurance ends, **except** as stated below.

**Exception:** If the member dies, his insured spouse may continue his insurance. The spouse will be required to pay the premiums due.

Insurance may be continued until the earliest of:

- the date the spouse is covered by another group plan
- the date the spouse remarries, or
- the date insurance would otherwise end under the group policy.

## LONG TERM DISABILITY BENEFITS

If an insured person becomes totally disabled and continues to be so disabled past the waiting period, United States Life will pay to him the benefits described below

The waiting period is shown in the Schedule of Benefits.

**DEFINITIONS**

TOTAL DISABILITY means:

**For members**

- during the waiting period and next 60 months, the complete inability of the member to perform the material duties of his regular job to include his specialty in the practice of law; "specialty in the practice of law" means the specialty in the practice of law which the member was performing on the day before total disability began.

- after such 60 months, the complete inability of the member to perform the material duties of any gainful job for which he is reasonably fit by training, education or experience.

The total disability must be a result of an injury or sickness. To be considered totally disabled, a member must also be under the regular care of a physician.

**For spouses**

during the waiting period and next 60 months, the complete inability of the spouse to perform the material duties of his regular job: "his regular job" is that which he was performing on the day before total disability began.

- after such 60 months, the complete inability of the spouse to perform the material duties of any gainful job for which he is reasonably fit by training, education or experience.

The total disability must be a result of an injury or sickness. To be considered totally disabled, an insured person must also be under the regular care of a physician.

PARTIAL DISABILITY means:

- for members, that a member is not able to perform the material duties of his regular job to include his specialty in the practice of law but he is able to perform:

- at least one of these duties on a part-time basis or
- at least one but not all, of these duties on a full-time basis.

"Specialty in the practice of law" means the specialty in the practice of law which the member was performing on the day before total disability began.

The partial disability must be a result of the injury or sickness that caused the total disability.

To be considered partially disabled, a member must also be under the regular care of a physician.

- for spouses, that a spouse is not able to perform the material duties of his regular job but he is able to perform:

- at least one of these duties on a part-time basis, or
- at least one, but not all, of these duties on a full-time basis.

"His regular job" is that which he was performing on the day before total disability began.

The partial disability must be a result of the injury or sickness that caused the total disability.

To be considered partially disabled, an insured person must also be under the regular care of a physician.

DISABILITY means total and/or partial disability

**MONTHLY BENEFITS**

The total disability benefit will begin to accrue on the day after the waiting period ends.

The total or partial disability benefit will be paid in the amount shown in the Schedule of Benefits.

Limited benefits will be paid for disability due to mental, nervous, or emotional disorders. These benefits are described on page LTD-2.

## LONG TERM DISABILITY BENEFITS (Continued)

**Benefits for part of a month**

To determine the benefit to be paid for a period of less than a full month:

- divide the benefit by 30
- multiply the result by the number of days in such period.

**DURATION OF BENEFITS**

Monthly benefits will be paid up to the maximum benefit periods shown in the Schedule of Benefits.

The benefit will end on the date:

1. the insured person fails to give required proof of continuing total or partial disability;
2. the insured person's total or partial disability ends;
3. the maximum benefit period ends; or
4. the insured person dies.

If this policy ends, this will not act to end the maximum benefit period.

**MONTHLY BENEFITS PAYABLE FOR PARTIAL DISABILITY**

If an insured person becomes partially disabled within 31 days after a period of total disability for which monthly benefits are payable, United States Life will pay the monthly benefit shown in the Schedule of Benefits. This monthly benefit will be paid while partial disability continues, up to the maximum benefit period shown in the Schedule of Benefits.

Limited benefits will be paid for disability due to mental, nervous, or emotional disorders. These benefits are described below.

United States Life has the right to require any proof needed to verify the insured person's earnings and continuation of partial disability.

**PREGNANCY BENEFITS**

No pregnancy benefits will be paid by this section, except as described on page P.

**LIMITED MONTHLY BENEFITS TO BE PAID FOR MENTAL, NERVOUS OR EMOTIONAL DISORDERS**

If total or partial disability is due to a mental, nervous or emotional disorder, the maximum benefit period will be 2 years.

If disability begins prior to age 63, benefits may be paid beyond the 2 year period, as follows.

If:

- the insured person is confined in a hospital at the end of 2 years,
- such confinement has been continuous for the immediately preceding 12 months, and
- the insured person is under 65 years of age;

then benefits will continue to be paid during the confinement, but not beyond the date the insured person attains age 65.

LONG TERM DISABILITY BE...FITS (Continued)

**SUCCESSIVE PERIODS OF DISABILITY**

Successive periods of disability will be considered one period of disability unless they are:

- due to unrelated causes, or
- separated by a return to full-time work for 6 or more continuous months.

A separate waiting period will apply for each separate period of total disability.

## LONG TERM DISABILITY BENEFITS (Continued)

### CONTINUATION OF INSURANCE WITHOUT PREMIUM PAYMENT (WAIVER OF PREMIUM)

No premium is due for the insured person who is receiving monthly benefits. When the insured person stops receiving monthly benefits, premiums must again be paid when due.

### EXCLUSIONS

No monthly benefit will be paid for disability due to:

- intentionally self-inflicted injury or attempted suicide
- a declared or undeclared war or an act of war
- service in the Armed Forces of any country, except during a temporary active duty assignment with the United States Armed Forces of less than eight weeks duration, or
- committing a crime or an attempt to do so.

## PREGNANCY BENEFITS

### FOR COMPLICATIONS OF PREGNANCY

The benefits to be paid by any section of this policy for a complication of pregnancy will be the same as those to be paid for a sickness.

COMPLICATIONS OF PREGNANCY means:

- conditions distinct from pregnancy, but caused or affected by it, which require hospitalization, provided the pregnancy does not terminate during such hospitalization
- non-elective caesarean section
- a terminated ectopic pregnancy, or
- spontaneous termination of pregnancy which occurs when a viable birth is not possible.

### FOR PREGNANCY PAID AS-ANY-OTHER-SICKNESS

As used in this policy for the benefits shown below, the term "sickness" includes:

- pregnancy
- childbirth
- abortion
- complications of any abortion, and
- related medical conditions

all referred to as "pregnancy."

The benefits to be paid by this policy for total or partial disability due to pregnancy will be the same as those to be paid for total or partial disability due to sickness.

**SPECIAL PROVISIONS FOR GROUPS TAKEN OVER FROM A PRIOR PLAN**

These special provisions apply **only** to those persons who were insured the Policyholder's group insurance plan in effect on October 31, 1994, Group Policy No. GMT-3A84, issued by the MUTUAL OF OMAHA INSURANCE COMPANY.

If the maximum benefit amount or maximum benefit period for disability has been exhausted under the Prior Plan, no benefits will be payable under this policy for the condition which caused the disability, except as stated in the Successive Periods Of Disability provision on page LTD-3.

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 27 of 60 PageID #: 27

## PREMIUMS

### FREQUENCY OF PREMIUM PAYMENT

The Policyholder and United States Life may agree that payment be made in advance every 1, 3, 6 or 12 months.

### PREMIUM FOR CHANGES IN INSURANCE

If a policy amendment or evidence of insurability is required for this insurance, premium will be charged as of the date such insurance takes effect.

For insurance that ends, premium will be charged to the end of the policy month in which insurance ends. However, if this policy ends, or if insurance ends for a class of members, premium will be charged to the date insurance ends.

### RIGHT TO CHANGE RATES

United States Life may change premium rates:

- when this policy is amended

- on any date on or after the first policy anniversary; this will be done only if United States Life notifies the Policyholder, in writing, at least 60 days before such change.

The new premium will apply only to premiums due on or after the date the rate change takes effect.

### XPERIENCE CREDIT

Not later than 90 days following the end of a policy year, United States Life will pay any available experience credits to the Policyholder.

The plan experience is based on the combined experience under group policy nos. G-164.155 and G-164.156.

### INSURANCE PREMIUM RATES

Premium rates are evidenced in the appropriate records of United States Life and the Policyholder.

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 28 of 60 PageID #: 28

## END OF INSURANCE PROVIDED BY THIS POLICY

### IF PREMIUM IS NOT PAID - GRACE PERIOD

Each premium, after the first, may be paid up to 31 days after its due date. This period is the grace period. The insurance provided by this policy will stay in effect during this period. If the premium is not paid by the end of this period, such insurance will end at that time.

United States Life may extend the grace period by written notice. Such notice will state the date insurance will end if the premium remains unpaid.

Premiums must be paid for a grace period and any extension of such period.

### Separate billing arrangements

Premiums for this policy may be paid in separate bills covering categories of insured persons set up by the Policyholder. If premium is not paid for a category of insured persons, United States Life can end insurance for such insured persons as set forth above.

### Individual billing arrangements

Premiums for this policy may be paid in separate bills covering individual insured persons. If premium is not paid for an individual insured person, United States Life can end insurance for such insured person as set forth above.

### OTHER WAYS INSURANCE MAY END

1. The Policyholder can end this policy by giving 30 days advance written notice to United States Life.

2. United States Life can end this policy by giving 60 days advance written notice to the Policyholder.

### IF INSURANCE ENDS - PREMIUMS

If insurance ends, all premiums due must be paid. Such payment will be on a pro rata basis for any period that insurance was in effect from the date the last premium was paid. If United States Life accepts premium after the date this policy ends, this will not act to "reinstate" the policy. United States Life will refund any unearned premium.

### REINSTATEMENT

To reinstate this policy, the Policyholder must complete the required form and send it to United States Life. If this request is approved, the policy will be reinstated on the date stated in writing by United States Life.

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 29 of 60 PageID #: 29

## GENERAL PROVISIONS

### THE CONTRACT

The entire contract is made up of:

- this policy
- the Policyholder's application, a copy of which is attached
- the Policyholder's reinstatement application, if any, a copy of which will be attached, and
- the individual applications of the insured persons.

All statements in the applications are representations and not warranties. Only statements contained in a written application will be used to void insurance, reduce benefits or defend a claim.

This policy may be changed, renewed or ended without notice to or consent of any person with a beneficial interest in this policy.

### LIMIT ON AGENT'S AUTHORITY

No agent may change or waive any provision of this policy. Any change or waiver must be approved in writing by an officer of United States Life.

### INCONTESTABILITY

United States Life will not contest this policy after it has been in force for 2 years from its effective date (or date of last reinstatement), except for non-payment of premiums.

### CERTIFICATES

United States Life will issue certificates to the Policyholder. The Policyholder must give a certificate to each insured member. Such certificates will describe each insured person's benefits and rights under this policy.

### MISSTATEMENTS

A person's age, sex or any other data may be misstated. If so, the correct data will be used to determine if insurance is in force. If insurance is in force, the premium and/or benefits will be adjusted according to the facts.

### DATA NEEDED

The Policyholder will keep a record of all the data needed to compute premiums and carry out the terms of this policy. United States Life can examine such data at any reasonable time.

### Clerical error

A clerical error may be made by United States Life or the Policyholder in keeping the data. If so, when the error is found, the premium and/or benefits will be adjusted according to the correct data. An error will not end insurance validly in force, nor will it continue insurance validly ended.

### PAYMENT TO A MINOR OR INCOMPETENT

If any beneficiary or payee is a minor or is incompetent to receive payment, United States Life will pay his guardian. United States Life will not be liable for such payment after it is made.

### ASSIGNMENT

United States Life will not be bound by any assignment unless it is in writing and is recorded at its home office. United States Life is not responsible for the validity of an assignment.

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 30 of 60 PageID #: 30

## GENERAL PROVISIONS (Continued)

### POLICY NON-PARTICIPATING

This policy does not pay dividends.

### AGENCY

The Policyholder is not the agent of United States Life for any purpose under this policy.

### NEW ENTRANTS

New persons may be insured according to the terms of this policy.

### COMPLIANCE WITH LAW

On the date this policy takes effect, some of its provisions may conflict with an applicable law. If so, any such provision is changed to comply with the minimums required by such law.

### GENDER

Male pronouns will be read as female where it applies.

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 31 of 60 PageID #: 31

## GENERAL PROVISIONS FOR ACCIDENT AN ) HEALTH INSURANCE

### FILING A CLAIM

To file a claim, follow these steps:

**Step 1:**

A claimant should send a written notice of claim to United States Life within 20 days of a loss. No special form is required to do this. The notice need only identify the claimant and the Policyholder.

**Step 2:**

When United States Life receives the notice, it will send a proof of claim form to the claimant.

**Step 3:**

The claimant should receive the proof of claim form within 15 days of the date United States Life received the notice of claim.

If the form is received within such time, it should be completed, as instructed, by all persons required to do so. Additional proof, if required, should be attached to the form.

If the form is not received within such time, the claimant may provide written proof of claim to United States Life on any reasonable form. Such proof must state the date the injury or sickness began and the nature and extent of the loss.

**Step 4:**

Proof of claim must be sent to United States Life within 30 days after the waiting period (see Schedule of Benefits). United States Life may require more proof as often as needed to verify disability.

If a notice or proof is sent later than the times shown above, United States Life will not deny or reduce a claim if the notice or proof was sent as soon as possible.

### PAYMENT OF CLAIMS

All benefits will be paid as they accrue.

### PHYSICAL EXAMS

United States Life, at its expense, has the right to examine the insured. This may be done as often as needed to process a claim.

### TIME LIMIT ON LEGAL ACTIONS

Legal action may only be brought against United States Life during a certain period. This period begins 60 days after the date proof of claim was filed and ends 3 years after the end of the period within which such proof is required.

3600 Route 66
PO Box 1580 . MSN 3-L
Neptune NJ 07754 1580

**THE UNITED STATES LIFE** Insurance Company

*An American General Company*

**GROUP INSURANCE POLICY ACCEPTANCE FORM**

**Full name of Policyholder:** AMERICAN BAR ENDOWMENT

**Address:** 750 N. Lake Shore Dr **City:** Chicago **State:** IL **Zip:** 60611

**Group Policy No.:** G-164,156

The person signing below approves the terms of the Group Policy and accepts its delivery.

**Signed by:** Renee Leskin Executive Director
signature title

**at:** Chicago IL **on:** June 4, 1998

**Witness:** [signature]
A licensed resident agent where required by law.

Distribution of originals: Policyholder (Please attach one original to your group policy). Please return one original to THE UNITED STATES LIFE Insurance Company.

**FORM NO. 15507**

THE UNITED STATES LIFE Ir ance Company In the City of New York
(Cal d United State; Life)

## GROUP POLICY RIDER FOR COST OF LIVING ADJUSTMENT (COLA) BENEFIT

This rider is issued in return for the payment by the Policyholder of the required premium. This rider is made a part of

**Group policy no.:** G-164,156

**Policyholder:** AMERICAN BAR ENDOWMENT

**Effective date:** May 1, 1998

This page and the pages that follow are part of this rider.

This rider does not apply to a plan of insurance which provides a 30 day waiting period.

### ELIGIBLE CLASSES

1. All members who:

- were insured under the group policy on April 30, 1998 with a 60 day waiting period and/or a 90 day waiting period and/or a 180 day waiting period and/or a 365 day waiting period; and
- are under age 65,

but not those who are totally or partially disabled on May 1, 1998, until such disability ceases due to a return to full-time work, and such request for this rider has been applied for and approved by United States Life.

2. All members who:

- are eligible under the group policy: and
- become insured under the group policy on or after May 1, 1998; or
- transfer from the 30 day waiting period plan to an eligible class on or after May 1, 1998.

### DATE PERSONS ARE ELIGIBLE FOR INSURANCE UNDER THIS RIDER

Each person in an eligible class on April 30, 1998 will be eligible for insurance under this rider on May 1, 1998.

Each person who enters an eligible class on or after May 1, 1998 will be eligible for insurance under this rider on the date he enters such class.

### DATE INSURANCE TAKES EFFECT UNDER THIS RIDER

**For members who were insured under the group policy in an eligible class on April 30, 1998**

A member must request the insurance benefits provided under this rider by paying the required premium due on May 1, 1998. If so, a member will be insured under this rider on May 1, 1998. If a member does not request such insurance on or before the due date, the benefits provided under this rider will not be available to the person unless applied for and approved by United States Life.

**For persons who enter an eligible class under the group policy on or after May 1, 1998**

A person must request the insurance benefits provided under this rider in writing. A person will be insured for such benefits on the date stated in writing by United States Life, provided the required premium is paid.

### PREMIUM

The premium rate for this benefit is evidenced in the appropriate records of United States Life and the Policyholder.

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 34 of 60 PageID #: 34

 THE UNITED STATES LIFE Insurance Company in the City of New York

*(Called United States Life)*

**POLICY AMENDMENT**

**Group policy no.:** G-164,156

**Policyholder:** AMERICAN BAR ENDOWMENT

**Effective Date:** May 1, 1998

The first paragraph of the SPECIAL PROVISIONS FOR GROUPS TAKEN OVER FROM A PRIOR PLAN provision on page TOG is changed to read:

These special provisions apply **only** to those persons who were insured under the Policyholder's group insurance plan in effect on October 31, 1994, Group Policy No. GMT-8888, issued by the MUTUAL OF OMAHA INSURANCE COMPANY.

These changes will not affect the group policy, or any prior amendments, except as stated above.

*Chairman of the Board*

THE UNITED STATES LIFE Insurance Company In the City of New York

*(Called United States Life)*

**Group policy no.:** G-164,156

**Policyholder:** AMERICAN BAR ENDOWMENT

**Effective date:** May 1, 1999

Pages END, GP-1, and GP-2 are replaced with the attached pages END, GP-1, and GP-2.

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 36 of 60 PageID #: 36

## END OF INSURANCE PROVIDED BY THIS POLICY

### IF PREMIUM IS NOT PAID - GRACE PERIOD

Each premium, after the first, may be paid up to 31 days after its due date. This period is the grace period. The insurance provided by this policy will stay in effect during this period. If the premium is not paid by the end of this period, such insurance will end at that time.

United States Life may extend the grace period by written notice. Such notice will state the date insurance will end if the premium remains unpaid.

Premiums must be paid for a grace period and any extension of such period.

**Separate billing arrangements**

Premiums for this policy may be paid in separate bills covering categories of insured persons set up by the Policyholder. If premium is not paid for a category of insured persons, United States Life can end insurance for such persons as set forth above.

**Individual billing arrangements**

Premiums for this policy may be paid in separate bills covering individual insured persons. If premium is not paid for an individual person. United States Life can end insurance for such person as set forth above.

### OTHER WAYS INSURANCE MAY END

1. The Policyholder can end this policy by giving 30 days advance written notice to United States Life.
2. United States Life can end this policy by giving 60 days advance written notice to the Policyholder.

### IF INSURANCE ENDS - PREMIUMS

If insurance ends, all premiums due must be paid. Such payment will be on a pro rata basis for any period that insurance was in effect from the date the last premium was paid. If United States Life accepts premium after the date this policy ends, this will not act to "reinstate" the policy. United States Life will refund any unearned premium.

### REINSTATEMENT

**For this policy**

To reinstate this policy, the Policyholder must complete the required form and send it to United States Life. If this request is approved, the policy will be reinstated on the date stated in writing by United States Life.

**For a person's insurance**

With respect to an insured person, if any premium after the first is not paid before the grace period ends, the insurance under the group policy will end with respect to such person. To reinstate such insurance, the person must complete the required form and send it to United States Life. If the request is approved, the insurance will be reinstated on the date stated in writing by United States Life.

## GENERAL PROVISIONS (Continued)

### MISSTATEMENTS

A person's age, sex or any other data may be misstated. If so, the correct data will be used to determine if insurance is in force. If insurance is in force, the premium and/or benefits will be adjusted according to the facts.

### DATA NEEDED

The Policyholder will keep a record of all the data needed to compute premiums and carry out the terms of this policy. United States Life can examine such data at any reasonable time.

### Clerical error

A clerical error may be made by United States Life or the Policyholder in keeping the data. If so, when the error is found, the premium and/or benefits will be adjusted according to the correct data. An error will not end insurance validly in force, nor will it continue insurance validly ended.

### PAYMENT TO A MINOR OR INCOMPETENT

If any beneficiary or payee is a minor or is incompetent to receive payment, United States Life will pay his guardian. United States Life will not be liable for such payment after it is made.

### ASSIGNMENT

United States Life will not be bound by any assignment unless it is in writing and is recorded at its home office. United States Life is not responsible for the validity of an assignment.

### POLICY NON-PARTICIPATING

This policy does not pay dividends.

### AGENCY

The Policyholder is not the agent of United States Life for any purpose under this policy.

### NEW ENTRANTS

New persons may be insured according to the terms of this policy.

### COMPLIANCE WITH LAW

On the date this policy takes effect, some of its provisions may conflict with an applicable law. If so, any such provision is changed to comply with the minimums required by such law.

### GENDER

Male pronouns will be read as female where it applies.

**THE UNITED STATES LIFE** Insurance Company In the City of New York

*(Called United States Life)*

125 Maiden Lane
New York, New York 10038

## CERTIFICATE OF INSURANCE

The term "Data Page" refers to the form which is inserted behind this page. The Data Page is added to and made a part of your certifice.

United States Life certifies that the person named on the Data Page is insured for the benefits described in this certificate. This insurance is subject to the eligibility and effective date requirements of the group policy.

### DATE YOUR INSURANCE TAKES EFFECT

Your insurance will take effect on the date shown on the Data Page.

You must be actively at work and in in an eligible class on the date your insurance is to take effect. If you are not, such insurance will take effect on the first of the month coinciding with or next following the date you resume such work.

The date insurance is to take effect might not be a scheduled workday. If so, you will be considered actively at work on such date if you were actively at work on your last scheduled workday.

You must be able to perform the normal activities of a person of like age and sex, with like occupation on the date your insurance is to take effect. If not, such Insurance will take effect on the first of the month coinciding with or next following the day you resume such activities.

You might be hospitalized on the date your insurance is to take effect. If so, insurance will take effect the first of the month coinciding with or next following the day after you are discharged.

### CANCELLATION DURING FIRST 30 DAYS

You may cancel the insurance described in this certificate at any time during the 30 day period after you receive this certificate. Mail this certificate with your written request for cancellation to the American Bar Endowment. The American Bar Endowment will promptly refund the premium paid.

### IMPORTANT NOTICE

The benefits described in this certificate are provided by group policy G-164,156. issued to the AMERICAN BAR ENDOWMENT, the Policyholder.

This certificate is a summary of the group policy provisions which affect your insurance. It is merely evidence of the insurance provided by such policy.

The group policy is a contract between United States Life and the Policyholder. It may be changed or ended without notice to or consent of any insured person.

This certificate replaces any certificate previously issued by United States Life to you under the group policy.

## CERTIFICATE INDEX

Each page in this certificate has a 2 line code at the bottom left of the page. The code "G-19001" means that the page belongs to the certificate series. The letter or letters below the certificate code represents a phonetic description of the particular section (FP = Face page; E = Eligibility).

This index refers you to the phonetic codes.

| SECTION | PAGE(S) |
|---|---|
| Face Page | FP |
| Schedule of Benefits | 2 |
| Definitions | 3 |
| Eligibility | |
| Date Insurance Ends | 3 |
| Long Term Disability Benefits | 4,5 |
| Pregnancy Benefits | 5 |
| Special Provisions For Groups Taken Over From a Prior Plan | 6 |
| End Of Insurance Provided By The Group Policy | 6 |
| General Provisions | |
| Misstatements | 6 |
| Payment To A Minor Or Incompetent | 6 |
| Assignment | 6 |
| Compliance With Law | 6 |
| Gender | 6 |
| General Provisions For Accident And Health Insurance | |
| Filing A Claim | 7 |
| Payment of Claims | 7 |
| Physical Exams | 7 |
| Time Limit On Legal Actions | 7 |

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 40 of 60 PageID #: 40

## SCHEDULE OF BENEFITS

### LONG TERM DISABILITY BENEFITS

| | |
|---|---|
| Waiting period during disability | see **Data Page** |
| Benefit per month of disability: | |
| • maximum for total disability * | the amount shown on the **Data Page**, not to exceed:<br>• for benefit amounts between $100 through $7,500, 66 2/3% of your basic monthly pay<br>• for benefit amounts greater than $7,500, 60% of your basic monthly pay. |
| • maximum for partial disability | A percentage of the monthly benefit paid to the member during total disability, as follows:<br>• if Partial Disability Earnings are between 1% and 10% of Pre-Disability earnings, 100%;<br>• if Partial Disability Earnings are between 11% and 50% of Pre-Disability earnings, 50%;<br>• if Partial Disability Earnings are between 51% and 70% of Pre-Disability earnings, 25%.<br>Note: amounts which do not fall within the percentages stated above for pre-disability earnings will be rounded to the nearest percentage. |
| • increased benefit during hospital confinement | an amount equal to the monthly benefit payable to you during total disability, increased by 50% |
| Maximum benefit period for each injury or sickness: | |
| • for total disability: | |
| - if total disability begins prior to age 63 | to age 65, **except** as stated below |
| **Exception:** for total disability due to mental, nervous or emotional disorders | see page 5 |
| - if total disability begins on or after age 63 | 24 months |
| • for partial disability | until the earliest of:<br>• the end of the maximum benefit period described above for total disability, or<br>• the end of a period of 2 years |
| • for increased benefits during hospital confinement | 3 months |

* a.) The elected amount, when adding the monthly benefit being applied for with the monthly benefit of all other disability income insurance, whether issued for or applied for, may not exceed:

- for benefit amounts between $100 through $7,500, 66 2/3% of your basic monthly pay
- for benefit amounts greater than $7,500, 60% of your basic monthly pay.

b.) You may apply for a benefit under more than one Plan, not to exceed a combined total of four Plans available under group policy no.s G-164,155 and G-164,156.

c.) The combined total limit of coverage for each insured member under group policy nos. G-164,155 and G-164,156 is $9,500.

**Change In Amount Insurance**

**For a decrease**

If insurance is to decrease, such change will take effect on the first of the month coinciding with or next following the date of request for a decrease.

**For an Increase**

An increase in your amount of insurance will take effect on the first of the month coinciding with or next following the date United States Life approves the request.

The monthly benefit, when adding the increased amount being applied for with the monthly benefit of all other disability income insurance, whether issued for or applied for, may not exceed:

- for benefit amounts between $100 through $7,500, 66 2/3% of your basic monthly pay
- for benefit amounts greater than $7,500, 60% of your basic monthly pay.

You must be actively at work on the date an increase in your insurance is to take effect. If you are not, such increase will take effect on the first of the month coinciding with or next following the date you resume such work.

The date the increase is to take effect might not be a scheduled workday. If so, you will be considered actively at work on such date if you were actively at work on your last scheduled workday.

You must be able to perform the normal activities of a person of like age and sex, with like occupation status on the date an increase in your insurance is to take effect. If you are not, such increase will take effect on the first of the month coinciding with or next following the day you resume such activities.

You might be hospitalized on the date an increase in your insurance is to take effect. If so, the increase will take effect on the first of the month coinciding with or next following the day after you are discharged.

## DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means that you perform each duty of your job for full pay. This must be done at your or your employer's place of business or any place to which such business requires you to travel.

FULL-TIME means active work on a regular work schedule required of your occupation, to include your specialty in the practice of law.

PHYSICIAN means:

- a medical practitioner licensed to provide medical services and perform general surgery,
- an authorized Christian Science practitioner as recognized by the Mother Church, the First Church of Christ, Scientist, in Boston, MA, or
- any other practitioner whose services, by law of the state where such services are performed, must be covered by this policy.

Each such person must be licensed in the state where he performs the service and must act within the scope of that license. He must also be certified and/or registered if required by such state. These requirements will not apply to an authorized Christian Science practitioner.

"Physician" will not include an insured member or an insured member's spouse or his or his spouse's father, mother, son, daughter, brother or sister.

HOSPITAL means a licensed institution which is approved by the Joint Commission on Accreditation of Hospitals. "Hospital" does not mean a place, or part of one, which is used mainly for:

- the aged
- the chronically ill
- convalescents
- drug addicts
- alcoholics
- rest home
- nursing home
- custodial, educational or rehabilitory care.

"Hospital" will be deemed to include approved Christian Science Sanitariums of this church.

WAITING PERIOD means a period of consecutive days of total disability for which no benefit is payable. The duration of the waiting period is shown in the Schedule of Benefits. The waiting period begins on the first day of total disability occurring after the effective date of your insurance.

BASIC MONTHLY PAY means your monthly rate of earned income from salaries, fees and other amounts received for personal services rendered or work performed. If you own any portion of a business or profession, Basic Monthly Pay would include your share of income earned by that business or profession to include your personal activities minus your share of the business expenses which are deductible for Federal Income Tax purposes. Such rate will be determined by the average of the 12 months' income after business expenses which immediately precedes your application. Basic Monthly pay does not include dividends, rents, royalties, annuities or other forms of unearned income.

PARTIAL DISABILITY EARNINGS means your rate of earned income from salaries, fees and other amounts received for personal services rendered or work performed during partial disability. If you own any portion of a business or profession, Partial Disability Earnings would include your share of income earned by that business or profession to include your personal activities minus your share of the business expenses which are deductible for Federal Income Tax purposes. Such rate will be determined by the monthly income after business expenses for each monthly period for which partial disability benefits are claimed. Partial Disability Earnings does not include dividends, rents, royalties, annuities or other forms of unearned income.

)E-DISABILITY EARNINGS means your monthly rate of earned income from salaries, fees and other amounts received for personal services rendered or work performed. If you own any portion of a business or profession, Pre-disability would include your share of income earned by that business or profession to include your personal activities minus your share of the business expenses which are deductible for Federal Income Tax purposes. Such rate will be determined by the average of the 12 months' income after business expenses which immediately precedes the date total disability commences. Pre-disability earnings does not include dividends, rents, royalties, annuities or other forms of unearned income.

G-19001
DEF

## ELIGIBILITY

### DATE INSURANCE ENDS

Your insurance will end at the earliest of:

1. the date the group policy ends;
2. the end of the period for which the last premium has been paid by you;
3. the date you retire;
4. the November 1 coinciding with or next following the date you cease being a member in good standing with the AMERICAN BAR ENDOWMENT;
5. the November 1 coinciding with or next following the date you cease full-time work for reasons other than disability, or
6. the November 1 coinciding with or next following the date you attain age 70.

## LONG TERM DISABILITY BENEFITS

If you become totally disabled and continue to be so disabled past the waiting period, United States Life will pay to you the benefits described below.

The waiting period is shown in the Schedule of Benefits.

### DEFINITIONS

TOTAL DISABILITY means:

- during the waiting period and next 60 months, your complete inability to perform the material duties of your regular job to include your specialty in the practice of law; "specialty in the practice of law" means the specialty in the practice of law which you were performing on the day before total disability began
- after such 60 months, your complete inability to perform the material duties of any gainful job for which you are reasonably fit by training, education or experience.

The total disability must be a result of an injury or sickness. To be considered totally disabled, you must also be under the regular care of a physician.

PARTIAL DISABILITY means that you are not able to perform the material duties of your regular job to include your specialty in the practice of law but you are able to perform:

- at least one of these duties on a part-time basis, or
- at least one, but not all, of these duties on a full-time basis.

"Specialty in the practice of law" means the specialty in the practice of law which you were performing on the day before total disability began.

The partial disability must be a result of the injury or sickness that caused the total disability.

To be considered partially disabled, you must also be under the regular care of a physician.

DISABILITY means total and/or partial disability.

### MONTHLY BENEFITS

The total disability benefit will begin to accrue on the day after the waiting period ends.

The total or partial disability benefit will be paid in the amount shown in the Schedule of Benefits.

**Benefits for part of a month**

To determine the benefit to be paid for a period of less than a full month:

- divide the benefit by 30
- multiply the result by the number of days in such period.

### DURATION OF BENEFITS

Monthly benefits will be paid up to the maximum benefit periods shown in the Schedule of Benefits.

The benefit will end on the date:

1. you fail to give required proof of continuing total or partial disability;
2. your total or partial disability ends;
3. the maximum benefit period ends; or
4. you die.

If the group policy ends, this will not act to end the maximum benefit period.

### MONTHLY BENEFITS PAYABLE FOR PARTIAL DISABILITY

If you become partially disabled within 31 days after a period of total disability for which monthly benefits are payable, United States Life will pay the monthly benefit shown in the Schedule of Benefits. This monthly benefit will be paid while partial disability continues, up to the maximum benefit period shown in the Schedule of Benefits.

United States Life has the right to require any proof needed to verify your earnings and continuation of partial disability.

### PREGNANCY BENEFITS

No pregnancy benefits will be paid by this section, except as described on page P.

## LONG TERM DISABILITY BENEFITS (Continued)

**LIMITED MONTHLY BENEFITS TO BE PAID FOR MENTAL, NERVOUS OR EMOTIONAL DISORDERS**

If total or partial disability is due to a mental, nervous or emotional disorder, the maximum benefit period will be:

- if disability begins prior to age 63, the earlier of:

- 5 years, or
- to age 65

- if disability begins on or after age 63, 24 months.

If disability begins prior to age 63, benefits may be paid beyond the 5 year period, as follows.

If:

- you are confined in a hospital at the end of 5 years,
- such confinement has been continuous for the immediately preceding 12 months, and
- you are under 65 years of age;

then benefits will continue to be paid during the confinement, but not beyond the date you attain age 65.

**SUCCESSIVE PERIODS OF DISABILITY**

Successive periods of disability will be considered one period of disability unless they are:

- due to unrelated causes, or
- separated by a return to full-time work for 6 or more continuous months.

A separate waiting period will apply for each separate period of total disability.

**CONTINUATION OF INSURANCE WITHOUT PREMIUM PAYMENT (WAIVER OF PREMIUM)**

No premium is due for you if you are receiving monthly benefits. When you stop receiving monthly benefits, premiums must again be paid when due.

**EXCLUSIONS**

No monthly benefit will be paid for disability due to:

- intentionally self-inflicted injury or attempted suicide
- a declared or undeclared war or an act of war
- service in the Armed Forces of any country, except during a temporary active duty assignment with the United States Armed Forces of less than eight weeks duration, or
- committing a crime or an attempt to do so.

G-19001
LTD

---

## PREGNANCY BENEFITS

**FOR COMPLICATIONS OF PREGNANCY**

The benefits to be paid by any section of the group policy for a complication of pregnancy will be the same as those to be paid for a sickness.

COMPLICATIONS OF PREGNANCY means:

- conditions distinct from pregnancy, but caused or affected by it, which require hospitalization, provided the pregnancy does not terminate during such hospitalization

- non-elective caesarean section
- a terminated ectopic pregnancy, or
- spontaneous termination of pregnancy which occurs when a viable birth is not possible.

**FOR PREGNANCY PAID AS-ANY-OTHER-SICKNESS**

As used in this policy for the benefits shown below, the term "sickness" includes:

- pregnancy
- childbirth
- abortion
- complications of any abortion, and
- related medical conditions

all referred to as "pregnancy."

The benefits to be paid by this policy for total or partial disability due to pregnancy will be the same as those to be paid for total or partial disability due to sickness.

## SPECIAL PROVISIONS FOR GROUPS TAKEN OVER FROM A PRIOR PLAN

These special provisions apply **only** to those persons who were insured by a prior plan.

PRIOR PLAN means the Policyholder's group insurance plan in effect on October 31, 1994, Group Policy No. GMT-3A84, issued by the MUTUAL OF OMAHA INSURANCE COMPANY.

If the maximum benefit amount or maximum benefit period for disability has been exhausted under the Prior Plan, no benefits will be payable under the group policy for the condition which caused the disability, except as stated in the Successive Periods Of Disability provision of the Disability Benefits section.

**G-19001**
**TOG**

---

## END OF INSURANCE PROVIDED BY THIS POLICY

### IF PREMIUM IS NOT PAID - GRACE PERIOD

Each premium, after the first, may be paid up to 31 days after its due date. This period is the grace period. The insurance provided by this policy will stay in effect during this period. If the premium is not paid by the end of this period, such insurance will end at that time.

United States Life may extend the grace period by written notice. Such notice will state the date insurance will end if the premium remains unpaid.

Premiums must be paid for a grace period and any extension of such period.

**G-19001**
**END**

---

## GENERAL PROVISIONS

### MISSTATEMENTS

A person's age, sex or any other data may be misstated. If so, the correct data will be used to determine if insurance is in force. If insurance is in force, the premium and/or benefits will be adjusted according to the facts.

### PAYMENT TO A MINOR OR INCOMPETENT

If any beneficiary or payee is a minor or is incompetent to receive payment, United States Life will pay his guardian. United States Life will not be liable for such payment after it is made.

### ASSIGNMENT

United States Life will not be bound by any assignment unless it is in writing and is recorded at its home office. United States Life is not responsible for the validity of an assignment.

### COMPLIANCE WITH LAW

On the date the group policy takes effect, some of its provisions may conflict with an applicable law. If so, any such provision is changed to comply with the minimums required by such law.

### GENDER

Male pronouns will be read as female where it applies.

## GENERAL PROVISIONS FOR ACCIDENT AND HEALTH INSURANCE

### FILING A CLAIM

To file a claim, follow these steps:

**Step 1:**

A claimant should send a written notice of claim to United States Life within 20 days of a loss. No special form is required to do this. The notice need only identify the claimant and the Policyholder.

**Step 2:**

When United States Life receives the notice, it will send a proof of claim form to the claimant.

**Step 3:**

The claimant should receive the proof of claim form within 15 days of the date United States Life received the notice of claim.

If the form is received within such time, it should be completed, as instructed, by all persons required to do so. Additional proof, if required, should be attached to the form.

If the form is not received within such time, the claimant may provide written proof of claim to United States Life on any reasonable form. Such proof must state the date the injury or sickness began and the nature and extent of the loss.

**Step 4:**

Proof of claim must be sent to United States Life within 30 days after the waiting period (see Schedule of Benefits). United States Life may require more proof as often as needed to verify disability.

If a notice or proof is sent later than the times shown above, United States Life will not deny or reduce a claim if the notice or proof was sent as soon as possible.

### PAYMENT OF CLAIMS

All benefits will be paid as they accrue.

### PHYSICAL EXAMS

United States Life, at its expense, has the right to examine the insured. This may be done as often as needed to process a claim.

### TIME LIMIT ON LEGAL ACTIONS

Legal action may only be brought against United States Life during a certain period. This period begins 60 days after the date proof of claim was filed and ends 3 years after the end of the period within which such proof is required.

Case 3:08-cv-00110-TAV-CCS Document 1 Filed 03/27/08 Page 46 of 60 PageID #: 46

**THE UNITED STATES LIFE** Insurance Company in the City of New York

*(Called United States Life)*

**CERTIFICATE RIDER**

**Group policy no.:** G-164,156

**Policyholder:** AMERICAN BAR ENDOWMENT

**Effective date:** November 1, 1994

The definition of Prior Plan in the **SPECIAL PROVISIONS FOR GROUPS TAKEN OVER FROM A PRIOR PLAN** provision on page 6 of your certificate is replaced with the following:

PRIOR PLAN means the Policyholder's group insurance plan in effect on October 31, 1994, Group Policy No. GMT-8888, issued by the MUTUAL OF OMAHA INSURANCE COMPANY.

These changes will not affect your certificate, or any prior riders, except as stated above.

THE UNITED STATES LIFE Insurance Company In the City of New York

*(Called United States Life)*

## GROUP CERTIFICATE RIDER FOR COST OF LIVING ADJUSTMENT (COLA) BENEFIT

This rider is issued in return for the payment of the required premium. This rider is made a part of

**Group policy no.:** G-164,156

**Policyholder:** AMERICAN BAR ENDOWMENT

**Effective Date:** The later of:

- November 1, 1995, or
- the effective date of your certificate (see Data Page)

**Status:** **Revised**

For benefits for total disability which begins on or after November 1, 1995:

**BENEFIT DESCRIPTION**

Subject to the conditions stated below, a Cost of Living Adjustment equal to a 3% increase in your elected monthly benefit amount will be paid to you if you have satisfied your Waiting Period and continue to be totally disabled from an injury or sickness for twelve months.

You will be eligible for these increase adjustments on the first anniversary of benefit payments and each following anniversary, if you are continuously receiving total disability benefits under the group policy.

Cost of Living Adjustment benefits will cease the earlier of:

- a total of five adjustments per period of disability have been made; or
- the date you cease to be totally disabled; or
- the date you die; or
- the end of the Maximum benefit period for each injury or sickness.

Cost of Living Adjustment Benefits are not subject to the maximum benefit per month of total disability.

For the purpose of calculating the adjustment, the elected monthly benefit amount will not include any prior years' Cost of Living Adjustment.

**PRE-EXISTING CONDITIONS PROVISION**

The Pre-Existing Conditions provision applies only to members who:

- were insured under the group policy on October 31, 1995 and who accepted the COLA rider offer by paying the increased premium as of November 1, 1995; or
- transferred from the 30 day waiting period plan.

PRE-EXISTING CONDITION means an injury or sickness for which you:

- incurred charges
- received medical treatment
- consulted a physician, or
- took prescribed drugs

within 12 months before you became insured by this rider.

No benefits for a pre-existing condition will be paid under this rider until the earlier of:

1. the date the you have not:

- incurred charges
- received medical treatment
- consulted a physician, or
- took prescribed drugs

for such condition, or any complication of it, for 12 continuous months, while insured under this rider; or

2. the date you have been insured under this rider for 24 continuous months.

This rider is subject to all provisions of the group policy which are not inconsistent with the terms of this rider.

These changes will not affect your certificate, or any prior riders, except as stated above.

THE UNITED STATES LIFE Insurance Company In the City of New York.

*(Called United States Life)*

**CERTIFICATE RIDER**

| | |
|---|---|
| **Group policy no.:** | G-164,156 |
| **Policyholder:** | AMERICAN BAR ENDOWMENT |
| **Effective date:** | The later of:<br>• November 1, 1995, or<br>• the effective date of your certificate (see Data Page) |
| **Status:** | **Revised** |

The group policy has been amended. Consistent with such amendment, the following changes are made to your certificate.

For benefits for total disability which begins on or after November 1, 1995:

A. The third bullet under the SCHEDULE OF BENEFITS on page 2 is deleted and replaced with the following:

• increased benefit during hospital confinement — the benefit amount otherwise payable, increased by 50%

B. The MONTHLY BENEFITS PROVISION on page 4 is changed to read:

**MONTHLY BENEFITS**

The total disability benefit will begin to accrue on the day after the waiting period ends.

The total or partial disability benefit will be paid in the amount shown in the Schedule of Benefits.

Limited benefits will be paid for disability due to mental, nervous, or emotional disorders. These benefits are described in item C., below.

C. The LIMITED MONTHLY BENEFITS TO BE PAID FOR MENTAL, NERVOUS OR EMOTIONAL DISORDERS provision on page 5 is changed to read:

**LIMITED MONTHLY BENEFITS TO BE PAID FOR MENTAL, NERVOUS OR EMOTIONAL DISORDERS**

If total or partial disability is due to a mental, nervous or emotional disorder, the maximum benefit period will be 2 years.

If disability begins prior to age 63, benefits may be paid beyond the 2 year period, as follows.

- you are confined in a hospital at the end of 2 years, and
- such confinement has been continuous for the immediately preceding 12 months, and
- you are under 65 years of age;

then benefits will continue to be paid during the confinement, but not beyond the date you attain age 65.

These changes will not affect your certificate, or any prior riders, except as stated above.

THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK

GROUP INSURANCE CERTIFICATE DATA PAGE

POLICYHOLDER AMERICAN BAR ENDOWMENT

GROUP POLICY NUMBER G-164,156
CERTIFICATE HOLDER ID 20091703-00(

INSURED MEMBER

CAROLYN KOWALSKI
GOLDMAN BRUNING ET AL
10570 S US HIGHWAY 1 STE 300
PORT SAINT LUCIE FL 34952-5697

SCHEDULE OF BENEFITS

| WAITING PERIOD | ORIGINAL EFFECTIVE DATE * | CURRENT EFFECTIVE DATE | TOTAL DISABILITY MONTHLY BENEFIT | COLA BENEFIT RIDER |
|---|---|---|---|---|
| 60 DAY | 11/01/96 | 11/01/96 | $3,800.00 | YES |

THIS DATA PAGE IS PART OF YOUR CERTIFICATE OF INSURANCE AND REPLACES AND SUPERSEDES ANY OTHER DATA PAGE PREVIOUSLY ISSUED.

* ORIGINAL EFFECTIVE DATE UNDER THE POLICYHOLDER'S DISABILITY PLAN.

DATE PREPARED 10/22/96

THE UNITED ST[illegible]ES LIFE INSURANCE COMPANY IN [illegible]HE CITY OF NEW YORK

GROUP INSURANCE CERTIFICATE DATA PAGE

POLICYHOLDER: AMERICAN BAR ENDOWMENT

GROUP POLICY NUMBER: G-164,156
CERTIFICATE HOLDER ID: 20091703-000

INSURED MEMBER:

CAROLYN KOWALSKI
CAROLYN KOWALSKI PA
3039 SW CAPTIVA CT
PALM CITY, FL 34990

SCHEDULE OF BENEFITS

| INSURED** | WAITING PERIOD | ORIGINAL EFFECTIVE DATE * | CURRENT EFFECTIVE DATE | TOTAL DISABILITY MONTHLY BENEFIT | COLA BENEFIT RIDER | IMPAIRMENT WAIVER |
|---|---|---|---|---|---|---|
| MEMBER | 60 DAY | 11/01/1996 | 10/01/2001 | $5,000.00 | YES | NO |

**INSURED
MEMBER = CAROLYN KOWALSKI

A copy of your application, if any, is attached to and made a part of this certificate.
This data page is part of your Certificate of Insurance and replaces and supersedes any data page previously issued.

* Original effective date under the policyholder's disability plan.

DATE PREPARED: 09/28/2001

THE UNITED STATES LIFE Insurance Company
ASSOCIATION PLAN COVERAGE CERTIFICATION FORM

ASSOCIATION ***ABE***

| MEMBRS NAME Carolyn Kowalski | MEMBER'S DATE OF BIRTH 4-24-60 |
|---|---|
| SPOUSE'S NAME | SPOUSE'S DATE OF BIRTH |

| TYPE OF COVERAGE | EFFECTIVE DATE MEMBER SPOUSE ORIGINAL/ WITH USL | POLICY NUMBER | CERTIFICAT NUMBER | MONTHLY BENEFIT | ELIMINATION PERIOD |
|---|---|---|---|---|---|
| LTD-MBR | 11-1-96 | G-164,156 | 00595726 | $5,000. | 60 days |
| | | | | | |

| | | | |
|---|---|---|---|
| Cola Option | No – | Yes-x | |
| Waivers | No - X | Yes | |
| Premiums PTD | 5/1/06 | Premium Dates | 2/1,5/1, 8/1,/11/1 |
| Claim form mailed | | Verification to USL | 3/22/06 |
| Date Verified | 3/22/06 | Rep Name | Juanita Thompkins |

**IN THE CIRCUIT COURT OF**
**JEFFERSON COUNTY, TENNESSEE**

| | | |
|---|---|---|
| **CAROLYN KOWALSKI,** | ) | |
| **Plaintiff,** | ) | **JURY DEMAND** |
| **v.** | ) | **NO.:** 21,661 I |
| | ) | **DIVISION** |
| **AMERICAN INTERNATIONAL GROUP, INC., AND AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, AND UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK,** | ) | |
| **Defendants** | ) | |

**COST BOND**

I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs in this court which may at any time be adjudged against the Plaintiff in the event said Plaintiff shall not pay the same.

Witness My Hand this 22nd day of February, 2008.

SURETY

Eric Buchanan & Associates, PLLC
Eric L. Buchanan TN BPR #018568
R. Scott Wilson TN BPR #019661
D. Seth Holliday TN BPR #02313
Attorneys for Plaintiff
414 McCallie Avenue
Chattanooga TN 37402

FILED 2-25 2008 AT 10:10 A.M.

# State of Tennessee

## In the Circuit Court of Jefferson County

Carolyn Kowalski

Plaintiff

American International Group, Inc., American General Life and Accient Co., United States Life Insurance Company in the City of New York

No. 21,661 I

Defendant

# SUMMONS

TO: United States Life Insurance Company in the City of New York by and through the Commissioner of the TN Department of Commerce & Insurance

Defendant Address

500 James Robertson Parkway, Suite 660
Nashville, TN 37243-1131

Defendant Address

Defendant Address

You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk of Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

WITNESSED and Issued this 25 day of Feb, 2008

Penny D. Murphy Circuit Court Clerk

By Faye Easley
Deputy Circuit Court Clerk

Attorneys for Plaintiff Eric Buchanan & Associates, PLLC

414 McCallie Avenue
Chattanooga, TN 37402
Address

Plantiff's Address ~~1517 Sandy Ridge Road Dandridge, TN 37725~~

Received this ______ day of ______, 20 ____

/S/ ______________
Deputy Sheriff

# State of Tennessee

## In the Circuit Court of Jefferson County

Carolyn Kowalski

Plaintiff

American International Group, Inc., American General Life and Accient Co., United States Life Insurance Company in the City of New York

No. 21,661 I

Defendant

## SUMMONS

TO: American General Life and Accident Co. by and through the Commission of the Tennessee Department of Commerce & Insurance

Defendant Address

500 James Robertson Parkway, Suite 660
Nashville, TN 37243-1131

Defendant Address

Defendant Address

You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk of Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

WITNESSED and Issued this 25 day of Feb., 20 08

Penny O Murphy, Circuit Court Clerk

By Faye Coaley
Deputy Circuit Court Clerk

Attorneys for Plaintiff Eric Buchanan & Associates, PLLC

414 McCallie Avenue
Chattanooga, TN 37402
Address

Plantiff's Address 1517 Sandy Ridge Road Dandridge, TN 37725

Received this ______ day of ______, 20 ____

/S/ ______
Deputy Sheriff

# State of Tennessee

## In the Circuit Court of Jefferson County

Carolyn Kowalski

Plaintiff

American International Group, Inc., American General Life and Accient Co., United States Life Insurance Company in the City of New York

No. 21.661 I

Defendant

COPY

# SUMMONS

TO: American International Group, Inc. by and through the Commissioner of the Tennessee Department of Commerce & Insurance

Defendant Address

500 James Robertson Parkway, Suite 660
Nashville, TN 37243-1131

Defendant Address

Defendant Address

You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk of Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

WITNESSED and Issued this 25 day of Feb, 20

[signature], Circuit Court Clerk

By [signature]
Deputy Circuit Court Clerk

Attorneys for Plaintiff Eric Buchanan & Associates, PLLC

414 McCallie Avenue
Chattanooga, TN 37402
Address

Plantiff's Address ~~1517 Sandy Ridge Road Dandridge, TN 37725~~

Received this _____ day of _____, 20___

/S/ __________
Deputy Sheriff

**IN THE CIRCUIT COURT OF**
**JEFFERSON COUNTY, TENNESSEE**

| | | |
|---|---|---|
| **CAROLYN KOWALSKI,** | ) | |
| **Plaintiff,** | ) | **JURY DEMAND** |
| **v.** | ) | **NO.: 21.661 I** |
| **AMERICAN INTERNATIONAL GROUP, INC., AND AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, AND UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK,** | ) | |
| **Defendants.** | ) | |

**NOTICE OF VOLUNTARY DISMISSAL**

**COMES** the Plaintiff, Carolyn Kowalski (hereinafter "Plaintiff"), by and through the undersigned counsel of record, and pursuant to Rule 41 of the Tennessee Rules of Civil Procedure, and makes this written notice of dismissal and hereby takes a voluntary nonsuit against Defendants American International Group, Inc., and American General Life and Accident Insurance Company, without prejudice to re-filing, in the above-entitled cause of action.

Dated this 13th day of March, 2008.

Respectfully submitted,
ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF

BY: D. Seth Holliday
Eric L. Buchanan (#018568)
R. Scott Wilson (#019661)
D. Seth Holliday (#023136)
414 McCallie Avenue
Chattanooga, Tennessee 37402
(423) 634-2506/(423) 634-2505 (fax)

FILED 3-17 20 08
AT 11:03 O'CLOCK A.M.
PENNY O. MURPHY, CLERK

**NOTICE OF FILING AND CERTIFICATE OF SERVICE**

To: Timothy L. Mickel
Husch Blackwell Sanders LLP
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402

Under penalties as provided by law pursuant to Tennessee Rule of Civil Procedure 5.03, I, the undersigned, state on oath that I filed and served the foregoing **Notice of Voluntary Dismissal**, by mailing same to the Circuit Court of Jefferson County Tennessee and the individual listed at the address shown at or before 5:00 p.m. in duly addressed envelopes with proper postage prepaid from 414 McCallie Avenue, Chattanooga, Tennessee 37402, on this 13th day of March, 2008.

D. Seth Holliday
D. Seth Holliday

ERIC BUCHANAN & ASSOCIATES, PLLC
Attorneys for Plaintiffs
414 McCallie Avenue
Chattanooga, Tennessee 37402
(423) 634-2506 (phone)
(423) 634-2505 (fax)

IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| CAROLYN KOWALSKI,<br>Plaintiff, | ) | |
| v. | ) | CASE NO. 21,661 I |
| AMERICAN INTERNATIONAL GROUP, INC., AND AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, AND UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, | ) | JURY DEMANDED |
| Defendants | ) | |

NOTICE OF FILING
OF NOTICE OF REMOVAL

Notice is hereby given that the Defendant United States Life Insurance Company, without waiving any defenses that it may have, will forthwith file in the U.S. District Court for the Eastern District of Tennessee at Knoxville, a Notice of Removal, a copy of which is attached hereto as **Exhibit A**, seeking to remove the action to the U.S. District Court for the Eastern District of Tennessee, at Knoxville.

Respectfully submitted,

HUSCH & BLACKWELL SANDERS LLP

By: [signature]
Timothy L. Mickel, BPR No. 17486
Caroline B. Stefaniak, BPR No. 25710
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
(423) 266-5500

Attorneys for United States Life Insurance Company

EXHIBIT
B

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and exact copy of the foregoing Notice of Filing of Notice of Removal has been forwarded to Eric L. Buchanan, R. Scott Wilson, and D. Seth Holliday, attorneys for plaintiff, 414 McCallie Avenue, Chattanooga, Tennessee 37402 by regular U.S. mail, postage prepaid, this 27th day of March, 2008.

Caroline B. Stefaniak